IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 00-40435
_____

IRMA GUERRA,

Plaintiff-Appellant,

v.

UNITED PARCEL SERVICE, INC.,

Defendant-Appellee.

_____
Appeal from the United States District Court
for the Southern District of Texas, Corpus Christi
C-98-CV-528
_____
February 13, 2001

Before JOLLY, MAGILL[*] and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:[**]

Irma Guerra worked for the United Parcel Service for twelve years as a package car driver in UPS' Corpus Christi facility. An essential element of her job is that she be able to lift seventy pounds. In fact, all of the positions at the Corpus Christi location require that an employee lift seventy pounds. UPS employees are allowed to seek assistance from either the customer or an employee in the central office to lift packages exceeding seventy pounds.

_____

[*]Circuit Judge of the Eighth Circuit, sitting by designation.

[**]Pursuant to 5TH CIR. R. 47.5, the Court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

In May 1996, Guerra suffered a back injury which left her permanently restricted by her doctor to lifting no more than fifty pounds.  From May 1996 until August 1996, UPS allowed Guerra to do temporary "light-duty" work.  UPS, however, would not permit Guerra to return to her position as a package car driver.  Guerra is seeking relief under the Americans with Disability Act of 1990 and Title VII of the Civil Rights Act of 1964.  Guerra claims that she was not allowed to return to her position because of her disability and that similarly situated male employees were treated more favorably than she.  The district court granted summary judgment in favor of UPS on all issues.  Guerra now appeals.

We review a district court's grant of summary judgment *de novo*, applying the same standard of review as would the district court.  *See Ellison v. Connor*, 153 F.3d 247, 251 (5th Cir.1998).  Summary judgment is only proper when there is not a genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  *See id.*  The evidence is viewed in a light most favorable to the non-movant.  *See Cardinal Towing & Auto Repair, Inc. v. City of Bedford,* 180 F.3d 686, 690 (5th Cir. 1999).

## ADA

To prevail on a discrimination claim under the ADA, Guerra must prove that 1) she has a disability; 2) she is a qualified individual for the position; and 3) there was an adverse employment decision.  *Turco v. Hoechst Celanese Corp.*, 101 F.3d 1090, 1092 (5th Cir. 1996).  The ADA defines a disability as "(A)

2

a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment."  42 U.S.C. § 12102(2).

Despite her acknowledgment that this court reviews this case *de novo*, Guerra first argues that she has a disability under the ADA in her reply brief.  She asserts that because the district court assumed in its decision that she was disabled, this court must also assume as such.  In the statement of facts, however, Guerra contends that her doctor determined that she was permanently restricted to lifting less than fifty pounds. Assuming *arguendo* that this is enough to sustain her burden that she in fact suffers from a disability, she has not presented issues of material fact that support the remaining requirements of her prima facie case under the ADA.

Guerra contends that she is a "qualified individual" as required by the ADA, because the requirement to lift seventy pounds is an arbitrary standard and not truly an essential element of her job.  A "qualified individual" under the ADA means:

> an individual with a disability who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires.  For the purposes of this subchapter, consideration shall be given to the employer's judgment as to what functions of a job are essential . . . .

42 U.S.C. § 12111(8).  Guerra's job description requires that she be able to lift seventy pounds.  Guerra acknowledges that there

3

are packages she delivers which weigh seventy pounds.  Moreover, the requirement is contained in all job descriptions at the Corpus Christi facility.  In fact, in the Joint Pretrial Order, signed by the attorneys for both Guerra and UPS, the parties set forth as an admission of fact that there is no genuine dispute that "the ability to lift seventy (70) pounds is an essential job function for a UPS delivery driver including a package car driver."  Given the relatively small size of the Corpus Christi facility, UPS has consistently required that employees be able to lift seventy pounds and has not waived this lifting requirement for other permanent employees.  Moreover, "[Congress] provided that whenever an employer gives written descriptions of the essential function of a job, those descriptions are entitled to substantial deference."  *Riel v. Electronic Data Sys. Corp*., 99 F.3d 678, 682 (5th Cir. 1996); 42 U.S.C. § 12111(8).

Nonetheless, Guerra contends that with reasonable accommodation she could perform this function of her job.  "[T]he term 'discriminate' in the context of the ADA 'includes not making reasonable accommodations to the known physical or mental limitations for an otherwise qualified individual with a disability . . . ."  *Gammage v. West Jasper School Board of Education*, 179 F.3d 952, 954 (5th Cir. 1999).  For example, she suggests that UPS could provide her with dollies and lifts or that it could allow her to ask for help from the customer or other employees when the package weighs more than fifty pounds. Alternatively she argues that UPS could put her on a route with

4

traditionally lighter packages or combine clerical or car washing positions to create a full time position for her. Moreover, Guerra assets that UPS did not engage in an interactive process to find a way to accommodate her disability.

"The ADA does not require an employer to relieve an employee of an essential function of his or her job, modify those duties, reassign existing employees to perform those jobs, or hire new employees to do so." *Burch v. City of Nacogdoches*, 174 F.3d 615, 621 (5th Cir. 1999); *Robertson v. Neuromedical Ctr.*, 161 F.3d 292, 295 (5th Cir. 1998). Even if UPS were to provide Guerra with a lift and dollies, it is unclear how Guerra would then be able to put the package on the dolly, bring the dolly up stairs or lift the package off the dolly. Moreover, UPS has no duty to have someone else do Guerra's job to accommodate her disability. The essential function of her job is to lift up to seventy pounds, requiring someone else to lift packages weighing more than 50 pounds is not accommodating her disability to allow her to do the essential function of her job, but merely hiring someone else to do it.

We have held that an employer is not required to create light duty jobs to accommodate disabled employees. *Foreman v. The Babcock and Wilcox Co.*, 117 F.3d 800, 809 (5th Cir. 1997); *Turco v. Hoechst Celanese Chemical Group*, *Inc.*, 101 F.3d 1090, 1094 (5th Cir. 1996). "For the accommodation of a reassignment to be reasonable, it is clear that a position must first exist and be vacant. Under the ADA, an employer is not required to

5

give what it does not have." *Foreman*, 117 F.3d at 810. In fact,

> [the employer] would not be obligated to accommodate [the employee] by reassigning him to a new position. "We do not read the ADA as requiring affirmative action in favor of individuals with disabilities, in the sense of requiring disabled persons be given priority in hiring or reassignment over those who are not disabled. It prohibits employment discrimination against qualified individual with disabilities, no more and no less."

*Id.* Thus, UPS has no duty under the ADA to create a position for Guerra or to hire someone else to do her job.

Guerra also argues that UPS refused to engage in the interactive process which is why UPS failed to find a way to accommodate her. "When an employer's unwillingness to engage in a good faith interactive process leads to a failure to reasonably accommodate an employee, the employer violates the ADA." *Loulseged v. Akzo Nobel Inc.,* 178 F.3d 731, 736 (5th Cir. 1999). The employer, however, need only engage in an informal interactive process. *Id.* at 736. The record reflects that UPS did indeed engage in this process — it did so through letters, phone calls and the scheduling of a medical examination to determine if any reassignment would be possible.

In the instant case, all permanent positions in the Corpus Christi facility require as an essential element of the position that the employee be able to lift seventy pounds. There are no permanent clerical or car washing positions available in the Corpus Christi facility. Accordingly, Guerra is not a qualified employee as a matter of law under the ADA and has therefore failed to show a prima facie case of disability discrimination

6

under the ADA.

## TITLE VII

Under Title VII, it is unlawful "for an employer . . . to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex or national origin." 42 U.S.C. § 2000e-2(a)(1). To establish a prima facie case for a gender discrimination claim Guerra must show 1) she was in a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) male employees were treated more favorably in similar circumstances. *Rutherford v. Harris County, Texas,* 197 F.3d 173 (5th Cir 1999). To show similar circumstances, the employees' situations must be "nearly identical." *Mayberry v. Vought Aircraft*, 55 F.3d 1086, 1090 (5th Cir. 1995).

Guerra claims that male employees were treated more favorably than she. As support, however, Guerra uses examples of individuals in different circumstances than she. For example, one man was disabled because of his sight and could no longer be a driver. He was, however, still able to lift seventy pounds and therefore, UPS kept him as a full time employee in a different position. Guerra also points to an employee who was restricted to lifting no more than 50 pounds, but nonetheless, UPS created a full time car washing position for him. This employee, however, worked in the larger Houston facility where light duty positions

7

were available.  In the smaller Corpus Christi facility, no permanent positions exist or are available that do not require an employee to lift seventy pounds.  The third male employee to whom Guerra compares herself did not have a permanent injury and returned to his position only after his lifting restriction was waived by his doctor. Guerra has not shown that a fact issue exists with respect to treatment of similarly situated employees and has not supported her prima facie case.

Assuming however, that Guerra has established a prima facie case, UPS has articulated a legitimate, nondiscriminatory reason for terminating Guerra's employment.  *See McDonnell-Douglas v. Green*, 411 U.S. 792, 802-04 (1973).  UPS' burden in this regard "is one of production, not persuasion; it 'can involve no credibility assessment.'"  *Reeves v. Sanderson Plumbing Products, Inc.*, 120 S. Ct. 2097, 2106 (2000)(citations omitted).  If UPS satisfies this burden, the burden shifts back to Guerra, who must prove that "the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.*

In regard to pretext, the Court held that "[t]he ultimate question is whether 'the employer intentionally discriminated, and proof that the employer's proffered reason is unpersuasive or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason  . . . is correct.'"  *Reeves*, 120 S. Ct. at 2107.  "In other words, 'it is not enough . . . to disbelieve the employer, the fact finder must believe the

8

plaintiff's explanation of intentional discrimination.'" *Id.* at 2108. "A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Id.* at 2109. "This is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability. Certainly there will be instances where, although the plaintiff has established a prima facie case and set forth sufficient evidence to reject the defendant's explanation, no rational factfinder could conclude that the action was discriminatory." *Id.*

UPS contends that Guerra was terminated because she was not able to perform essential functions of her job. Guerra offers no evidence that this reason is pretextual or that the real reason was discriminatory. There is no evidence that the seventy-pound restriction was waived for any permanent male employee at a facility the size of Corpus Christi. There is no evidence that UPS discriminated against her because she was a female. Thus, Guerra has not shown that an issue of material fact exists with regard to gender discrimination.

Accordingly, we AFFIRM the district court's granting of summary judgment in favor of UPS.